John M. Magliery (JM 9371)
Derek McNally (DM 1080)
JOHNSON GALLAGHER MAGLIERY LLC
99 Wall Street, 15th Floor
New York, New York 10005
(212) 248-2220
*Pro Se*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNSON GALLAGHER MAGLIERY, LLC<br><br>         Plaintiff,<br><br>   -against-<br><br>CHARTER OAK FIRE INSURANCE COMPANY<br>d/b/a TRAVELERS INSURANCE,<br><br>         Defendant. | Case No. 13-CV-866 (DLC) |

**DECLARATION OF JOHN M. MAGLIERY IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY PURSUANT TO FED. R. CIV. P. 56D**

JOHN M. MAGLIERY, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a Member of Johnson Gallagher Magliery LLC ("**JGM**"), which appears *pro se* in the above-captioned action. I am familiar with the proceedings in this case. I make this declaration (1) in support of JGM's request pursuant to Fed. R. Civ. P. 56(d) that the Court deny the motion for partial summary judgment (the "**Motion**") filed by Charter Oak Fire Insurance Company d/b/a Travelers Insurance ("**Charter Oak**") to allow JGM to obtain the discovery it needs to fully oppose the Motion, or alternatively (2) in opposition to the Motion. This declaration is based upon my personal knowledge except where noted, in which case the source of my knowledge is identified.

2. JGM is a small, three-member law firm employing five associates and five other members of staff. Its offices are located at 99 Wall Street in the Borough of Manhattan (the

1

"**Building**"). JGM leased, and still leases, the 14th and 15th floors of the Building for its offices (the "**Offices**") and leased, until mid-2013, a room in the basement and a room in the sub-basement of the Building for storage of files and other personal property (the "**Storage Spaces**," and together with the Offices, the "**Premises**"). JGM purchased a policy written by defendant Charter Oak, number I680-6290B676 (the "**Policy**"), which insured JGM for a variety of covered causes of loss for both property casualty and also for a loss of business income or extra expense incurred when JGM's operations were suspended or during a period of restoration following a casualty. The Policy is voluminous; a true and correct copy of excerpts of the Policy relevant to JGM's claims detailed below is annexed hereto as Exhibit E.

**A.  Hurricane Sandy.**

3. In late October, 2012, a hurricane was predicted to approach the New York City metropolitan area. The storm, named "Sandy," was expected to meet an already-forming Nor'easter storm forming over the US Midwest, and was therefore dubbed "Superstorm Sandy." In anticipation of Sandy, New York City issue a mandatory evacuation order (Executive Order 163) for "Zone A," in which JGM's office is located, beginning at 7 P.M. on October 28, 2012. Moreover, the Consolidated Edison Company of New York, Inc. ("**Con Edison**") took precautionary measures including, among others, preemptively shutting down parts of its power network. A true and correct copy of Executive Order 163 is annexed hereto as Exhibit F.

4. Sandy proved to be a devastatingly severe hurricane that struck the greater New York area on October 29 and 30, 2012. According to the US National Hurricane Center, it was the largest Atlantic hurricane since records began. It caused powerful winds and storm surge that inundated large parts of New York City.

5.      As a result of Sandy, the Premises suffered wind damage from windows that blew into the Offices, breaking furniture and lighting. Moreover, the Premises lacked electricity, heat, telephone service, and internet service. JGM's electronic systems did not function without the necessary infrastructure. The Storage Spaces were inundated as a result, at least in part, of sewer or drain back-up. JGM was forced to hire an environmental remediation firm to remove the files and other materials it had stored in the Storage Spaces. That firm indicated that it had encountered sewage in the sub-basement. A true and correct copy of an email I sent to a representative of Claremont 99 Wall, LLC, and the Building manager, The Claremont Group LLC (together, "**Claremont**") about this discovery is annexed hereto as Exhibit G.

6.      Given the conditions prevailing in Zone A following Sandy, the City of New York issued Executive Order 165, which prevented re-occupation of JGM's offices until after the New York City Department of Buildings ("**DOB**") certified the Building as safe. A true and correct copy of Executive Order 165 is annexed hereto as Exhibit H.

7.      Telephone and internet service was not restored to the Premises until about January 7, 2013, when JGM finally re-occupied its offices.

8.      On or about October 31, 2012, JGM made an initial insurance claim to Charter Oak for the losses and damages, including business loss and extra expense, suffered as a result of Sandy. By letter dated December 3, 2012, Charter Oak denied coverage related to damages sustained by JGM resulting from Sandy. This lawsuit followed. A true and correct copy of the letter from Charter Oak denying JGM's claim is annexed hereto as Exhibit I.

**B.      Early Mediation and Charter Oak's Motion for Partial Summary Judgment.**

9.      In light of the amount in controversy, the identity of the plaintiff, and its *pro se* appearance, the Court determined that this case was appropriate for an early, pre-discovery effort

for resolution and ordered the parties to a settlement conference before Magistrate Judge Dolinger. The parties agreed at the Rule 16 conference that the production of documents from Con Edison would be the only necessary precondition for conducting a meaningful settlement conference. The parties served a joint subpoena on Con Edison and, after some delay, Con Edison produced documents including the Con Edison Report on Preparation and System Restoration Performance, Sandy October 29 through November 12, 2012, dated January 11, 2013, filed pursuant to Part 105.4(c) of the Rules of the Department of Public Service ("**Con Edison Report**") and two affidavits from a Con Edison employee named Maria Rodriguez, one sworn to June 27, 2013 ("**Rodriguez Aff. No. 1**") and the other sworn to August 9, 2013 ("**Rodiguez Aff. No. 2**"). A true and correct copy of the Rodriguez Aff. No. 1 is annexed hereto as Exhibit J; a true and correct copy of the Rodriguez Aff. No. 2 is annexed hereto as Exhibit K. The Con Edison report is voluminous. It is attached in its entirety to Charter Oak's 56.1 statement, but a true and correct copy of relevant excerpts of the Con Edison Report is annexed hereto as Exhibit L.

10. After receiving the documents from Con Edison, the parties scheduled a settlement conference with Magistrate Dolinger, which was held on September 16, 2013. The parties were unable to reach a settlement at the September 16 conference.

11. Two weeks before the settlement conference and without any prior discussion, Charter Oak filed the instant Motion seeking to dismiss any claims for business interruption because of the loss of electrical power to JGM's offices. Before Charter Oak filed the Motion, the parties had not sought any other discovery than what the documents received from Con Edison. Therefore, the parties had not sought Con Edison's deposition, nor any discovery or deposition of the Building's owner or manager, nor any discovery or deposition of each other.

C.  **The Motion Should Be Denied Because Discovery is Necessary to Resolve It; Even if Further Discovery is Not Granted, the Motion Should Be Denied Because of Material Unresolved Factual Disputes.**

12. Pursuant to Rule 56(d), if a party opposing a summary judgment motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may deny the motion. In this case, JGM seeks documents, information, and depositions from Charter Oak and two non-parties in order to oppose Charter Oak's motion.

13. First, JGM seeks a deposition of one or more representatives of Con Edison, including the affiant in the two affidavits it supplied to Charter Oak, Maria Rodriguez, and a person with knowledge of the facts relating to the shut-down of electricity to JGM's Premises on or about October 29, 2012; the effects of Hurricane Sandy on the network supplying electricity to JGM's Premises; and the restoration of electricity to JGM's Premises. JGM has subpoenaed Con Edison for the deposition, which is scheduled for October 30, 2013. A true and correct copy of the subpoena that JGM issued to Con Edison is annexed hereto as Exhibit M.

14. Second, JGM seeks documents and a deposition from Claremont concerning whether and to what (1) electrical service was not available to the Premises, and why; (2) Claremont's efforts to comply with Executive Order 165, and the time in which the Premises were inaccessible as a result of that Order, and (3) the extent water in the Storage Spaces resulted from flooding as opposed to sewer or drain backup. JGM has subpoenaed Claremont for both documents and a deposition, which is scheduled for November 5, 2013. A true and correct copy of the subpoena that JGM issued to Claremont for documents is annexed hereto as Exhibit N; a true and correct copy of the subpoena that JGM issued to Claremont for a deposition is annexed hereto as Exhibit O.

15. The information sought by JGM is germane to its opposition to the Motion for the following reasons.

5

16. Charter Oak relies on the Rodriquez Aff. No. 1. and the Con Edison Report to claim that Con Edison preemptively shut down the electrical network in advance of Hurricane Sandy because of "the impending flood" (Defendant's Memorandum of Law, 11) and that the network sustained flood damage that prevented Con Edison from providing Electrical Service to JGM. However, the Rodriquez Aff. No. 1. says nothing about "an impending flood." Rather Ms. Rodriguez states that the network was shut down to "preserve the integrity of the electric system." Rodriqguez Aff. No 1. (Ex .J) at ¶ 4. Ms. Rodriguez's explanation for Con Edison's shut-down of the electrical network is vague and inconclusive, and JGM should have the opportunity to cross-examine her on this point before opposing the Motion.

17. Moreover, Charter Oak relies on Rodriguez Aff. No. 1. for its argument that no damage to the electrical network resulted from the de-energizing and re-energizing of the Bowling Green network, which she states supplies the Building, and there is a lack of coverage without direct physical loss to power supply services. But the affidavit do not address whether *Sandy* caused any physical loss to the electrical network, vaults, or transmission lines. It stands to reason that it did, because according to Rodriguez Aff. No. 1, the Bowling Green network was re-energized on November 3, 2012, but the Building did not receive electricity from Con Edison again until November 11, 2012. Con Edison should have evidence as to whether any physical loss took place, which would meet Charter Oak's contention that the Policy does not cover the electrical fault because no physical loss to electrical equipment took place.[1] Claremont may also have knowledge of whether electrical service was interrupted because of direct physical loss to Con Edison transmission lines or vaults, or whether the interruption of power was caused in whole or in part by direct physical loss to equipment owned by Claremont located in the

---

[1] Ms. Rodriguez presumably provided her affidavits at Charter Oak;s request. JGM should have the opportunity to question Ms. Rodriguez under oath regarding the communications, if any, she had with Charter Oak about her affidavits.

Building. In either event, Charter Oak would not be entitled to summary judgment, because the Lawyer's Endorsement would cover JGM when direct physical loss occurs away from the Premises, and the Premises is defined by the Policy as JGM's leased premises (and not the Building).

18.     Moreover, the Con Edison Report does not definitively state that the electrical network servicing JGM's premises sustained flood damage. Rather, the portion of the Con Edison Report relied on by Charter Oak describes four different electrical networks (one in Brooklyn and three in lower Manhattan) that were de-energized by Con Edison before or during Hurricane Sandy. While the report states that parts of these networks were affected by water, the Con Edison Report does not specifically identify which parts of which networks were affected by water. Also the report states that Con Edison also "faced environmental hazards including diesel fuel, kerosene and raw sewerage" as they worked to re-energize the networks. Con Ed Report (Ex. L), 71-72. Con Edison also states that some of its customers were "not affected by the flood waters" but were still without electricity. *Id.* at 72. JGM should have the opportunity to question the author of the Con Edison about these and other statements in the Con Edison Report, which contradict Charter Oak position that JGM's loss of business claim is barred by the flood exclusion in the Policy.

19.     Charter Oak has also claimed that the Policy does not provide coverage for the "acts or decisions" of any "organization," thereby absolving itself of liability for Con Edison's preemptive shutdown of power to the Building. However, in the same brief, Charter Oak calls Con Edison "quasi-public" in its function as a utility. If Con Edison is functioning as a civil authority, then its acts would be specifically *included* in coverage, despite the more general "acts" exclusion, under a provision of the Policy that grants coverage for actions of the "civil

authority," a term which is undefined in the Policy. JGM is entitled to discovery into the nature of Con Edison's activities and its degree of autonomy or discretion as delegated from New York State regulators to determine if Con Edison falls within the definition of a civil authority, as used in the Policy.

20.     Furthermore, the "acts" exclusion states that although "acts" of an organization are not excluded from coverage, when such "acts" result in a "Covered Cause of Loss," Charter Oak will pay for the loss caused by the Covered Cause of Loss. JGM is entitled to discover all of the consequences of Con Edison's determination to preemptively shut down power to the Premises to understand whether that "act" itself resulted in a Covered Cause of Loss, in which event Charter Oak would have to cover JGM's losses for the duration of the act's consequences. Therefore JGM needs information from Con Edison to prove that the "act" resulted in the exception to the exclusion.

21.     Lastly, JGM is seeking information from Claremont about the extent to which electrical supply was interrupted as a result of sewer or drain backup as opposed to flooding of outside waters. While Charter Oak argues that flooding is excluded as a covered cause of loss under the Policy, the Sewer or Drain Backup is a separate policy extension that JGM purchased in order to gain coverage, up to a limited amount, for loss "caused by or resulting from water or sewage that backs up or overflows from a sewer, drain, or sump." Water in the basement and sub-basement of the Building may well have resulted from an overflow of a drain or failure of a sump, and in that event, JGM would have coverage as a result of the extension. Because Claremont hired one or more environmental testing and remediation firms, it is likely to have information about the source of the water in the Building, or alternatively JGM can seek discovery from those firms.

22. JGM believes it will ultimately succeed at obtaining the discovery it seeks through the Subpoenas from Con Edison and Claremont.

23. Even without additional discovery, the same issues of fact set forth above as requiring additional discovery would necessarily still require the Court to deny Charter Oak's motion on the merits, as material issues of fact remain in dispute that cannot be resolved on the present record.

WHEREFORE it is respectfully requested that the Court deny the Motion, or allow JGM time to obtain the discovery it needs to more fully oppose the Motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 9th day of October, 2013, in New York, New York.

_____
John M. Magliery